## STATE OF KANSAS v. ATCHISON, T. & S. F. RY. CO.

### (Circuit Court, D. Kansas, F. D.   December 7, 1896.)

### No. 7,391.

REMOVAL OF CAUSES—FEDERAL QUESTION—PLEADINGS.

> Under Act Cong. March 3, 1887, as amended August 13, 1888, an action commenced in a state court cannot be removed to a federal court, as a case arising under the constitution, laws, or treaties of the United States, unless the fact that it so arises appears from the plaintiff's statement of his own claim; and the statement in the complaint, by way of anticipation of a defense, of statutes of the United States, etc., upon which a defense may be founded, will not entitle the defendant to remove the case.

Henry Keeler, D. R. Hite, and H. T. Phenney, for complainant.

E. D. Kenna, C. N. Sterry, Robert Dunlap, and Albert H. Horton, for defendant.

Before THAYER, Circuit Judge, and FOSTER, District Judge.

FOSTER, District Judge.   The motion to remand this case to the state court presents the simple question of jurisdiction.   That question is ever present in all judicial proceedings, and courts will at all times take notice of objections to their jurisdiction, whether they come from the parties to the litigation, or of their own volition.

This action, commenced in the district court of Jefferson county, by the state, to forfeit the real estate, the roadbed, and right of way of defendant in said county, is predicated on an act of the legislature of 1891 (Chapter 3), entitled, "an act in regard to aliens, and to restrict their rights to acquire and hold real estate, and to provide for the disposition of the lands now owned by nonresident aliens."

The second section of the act reads as follows:

> "Sec. 2. That no corporation or association, more than twenty per centum of the stock of which is or may be owned by any person, or persons, corporation or association, not citizen of the United States, or of some district or territory thereof, shall hereafter acquire, hold or own any real estate in the state of Kansas."

By section 5 of the act it is provided that real estate held in violation of the act shall be forfeited to the state of Kansas, and makes it the duty of the county attorney of any county in which such real estate is situated to enforce such forfeiture in a civil action brought in the name of the state as plaintiff.   It further

provides that the court shall appoint a receiver to take charge of the real estate.

The sixth section of the act provides as follows:

"If upon the final hearing of such action the court shall find that any portion of the real estate described in the petition is held or owned in violation of. this act, the court shall adjudge such real estate forfeited to the state; and shall order the same appraised, sold and conveyed by the sheriff in parcels not exceeding one hundred and sixty acres each, in the same manner provided by law for the sale of real estate upon execution."

By section 7 it is provided how the money arising from the sale of the forfeited lands shall be disposed of; that, after compensating the receiver, paying the costs of the action, and allowing the county attorney 10 per centum for his services, the residue shall be paid to the owner of the real estate at the time of the forfeiture. If not so paid within 30 days, it shall be paid into the treasury of the state of Kansas, subject to the order of the person adjudged to be entitled thereto.

This statute is, in some respects, a remarkable one; and, if it means all that has been claimed for it by attorneys temporarily speaking for the state in this case, I might say it is almost alarming in its possibilities; but with the merits of the controversy involved, we are not now concerning ourselves.

The attorney general, with a fairness commendable in an officer presenting to the court a case of such importance to the state, and to the rights of individuals and corporations, has set forth in full, in the amendments to the petition, all the material facts touching this proceeding. In addition to the averments necessary to bring the case within the provisions of the act of the legislature that more than 20 per centum of the stock of the defendant is owned and held by nonresident aliens, etc., he has set forth and cited the act of congress of March 3, 1863, granting lands to the state of Kansas in trust for the Atchison, Topeka & Santa Fé Railroad Company, and imposing certain duties and obligations upon the railroad company to the general government in the transportation of troops and property of the United States, from which is quoted the following paragraph:

"That said lands hereby granted to said state shall be subject to the disposal of the legislature thereof for the purposes aforesaid, and no other; and the said railroads and branches shall be and remain public highways for the use of the government of the United States, free from all toll or other charges upon the transportation of any property or troops of the United States." .

The plaintiff further sets forth the acceptance of these lands by the state in trust, and the acceptance of the provisions of the act, and its obligations by the railroad company. It further alleges that the defendant corporation, whose property is sought to be forfeited in this proceeding, is part of a great system of railroads, formerly owned and operated by the Atchison, Topeka & Santa Fé Railroad Company, and now owned by the defendant corporation, extending into and through the states of Kansas, Missouri, Iowa, Illinois, and Colorado, and the territories of New Mexico and Oklahoma, said corporation being engaged in interstate commerce; in

the transportation of the mails of the United States, and as a postal and military route under various acts of congress. The plaintiff further proceeds to show by apt averments, that, by virtue of certain legal proceedings in this court, the present defendant company has succeeded to all the rights, privileges, and immunities granted to, and to all the duties and obligations imposed upon, its predecessor in the possession and operation of its railroad, and thereupon prays the court to grant judgment of forfeiture, or such relief under the act of the legislature as the rights of all parties will warrant.

The case is removed by the defendant to this court on the ground that it is a civil action, arising under the constitution, laws, and treaties of the United States. This leads us to a brief examination of the act of congress of March 3, 1887, as amended in 1888, concerning the jurisdiction of federal courts, the right of removal of causes to such courts, and of some of the decisions of the courts touching these questions. It is well known to the legal profession that recent decisions of the supreme court of the United States have laid down this rule: The circuit court of the United States has no jurisdiction, either original or by removal from a state court, of a suit as one arising under the constitution, laws, or treaties of the United States, unless that appears by the plaintiff's statement of his own claim. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34; Land Co. v. Brown, 155 U. S. 488, 15 Sup. Ct. 357; Postal Tel. Cable Co. v. State of Alabama, 155 U. S. 482, 15 Sup. Ct. 192; St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. R. Co., 15 C. C. A. 167, 68 Fed. 2; Railroad Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173.

In the case of Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, we find a full discussion of this question, and a consideration of the act of congress of 1887–88. It appears that under the act of 1875, fixing the jurisdiction of the United States courts, it had become the established rule that in original proceedings in the circuit courts, where the plaintiff relied upon the ground that his was a suit arising under the constitution, laws, or treaties of the United States, such fact must have been made to appear affirmatively at the outset from the plaintiff's complaint. Metcalf v. Watertown, 128 U. S. 589, 9 Sup. Ct. 173. That the right to sue cannot depend upon the defense which the defendant may choose to set up. Plaintiff's complaint must show that he relied on some right under the constitution, laws, or treaties of the United States. City of Fergus Falls v. Fergus Falls Water Co., 19 C. C. A. 212, 72 Fed. 874. In this case Judge Caldwell says:

"The plaintiff seeks, in its complaint, to inject a federal question into the case, by suggesting that the defendant will interpose, as a defense to the suit, a resolution of its council which impaired the obligation of the contract, in contravention of the constitution. It is apparent that the only use the plaintiff proposes to make of the constitution is as a barrier to a defense which the plaintiff suggests the defendant may set up. The appeal to the constitution is made, not to support the

plaintiff's cause of action, but by way of replication to an anticipated defense. The jurisdiction of the circuit court cannot be invoked by any such form of pleading in an action like this."

But it was held sufficient to justify removal under the act of 1875, by the defendant, that the record, at the time of the removal, showed that either party claimed a right under the constitution or laws of the United States. Railroad Co. v. Mississippi, 102 U. S. 135; Metcalf v. Watertown, 128 U. S. 589, 9 Sup. Ct. 173; Tennessee v. Union & Planters' Bank, 152 U. S. 460, 14 Sup. Ct. 654, and cases cited. If that rule held good under the act of 1887–88, I should have no hesitation in saying that this record presented a case for removal to this court.

In the Tennessee Case, 152 U. S., on page 461, 14 Sup. Ct. 656, the court uses this language:

"Where, however, the original jurisdiction of a circuit court of the United States is invoked, upon the sole ground that the determination of the suit depends upon some question of a federal nature, it must appear at the outset, from the declaration or the bill of the party suing, that the suit is of that character. In other words, it must appear in that class of cases that the suit was one of which the circuit court, at the time its jurisdiction is invoked, could properly take cognizance. If it does not so appear, then the court, upon demurrer or motion, or upon its own inspection of the pleading, must dismiss the suit, just as it would remand to the state court a suit which the record at the time of removal failed to show was within the jurisdiction of the circuit court. It cannot retain it in order to see whether the defendant may not raise some question of a federal nature, upon which the right of recovery will finally depend; and, if so retained, the want of jurisdiction, at the commencement of the suit, is not cured by an answer or plea which may suggest a question of that kind. That view has been affirmed and acted on at the present term in Mining Co. v. Turck, 150 U. S. 138, 143, 14 Sup. Ct. 35."

The court further says that by the act of 1875, in case of original jurisdiction, it was essential to jurisdiction that the plaintiff's declaration or bill should show that he asserts a right under the constitution or laws of the United States. The court further says that under the clause in section 2 of the act of 1887–88, for removal of causes from the state to the federal courts, removal can be made only by defendants, and of suits "'of which the circuit courts of the United States are given original jurisdiction by the preceding section,' thus limiting the jurisdiction of a circuit court of the United States on removal by the defendant, under this section, to such suits as might have been brought in that court by the plaintiff under the first section." "The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this court, to contract the jurisdiction of the circuit courts of the United States,"—citing many cases. The court then (page 462, 152 U. S., and page 657, 14 Sup. Ct.) quotes the dissenting views of Mr. Justice Miller in the original decision, justifying a removal under the act of 1875, as indicative of the intent of congress in changing the phraseology in the removal act of 1887. "Looking," said he, "to the reasons which may have influenced congress, it may well be supposed that, while that body intended to allow the removal of a suit where the very foundation and support thereof was a law of the United States, it did not intend to authorize a removal where the cause of action de-

pended on the law of the state, and when the act of congress only came in incidentally as a part (it might be a very small part) of the defendant's plea in avoidance." While the court does not say in terms that, to authorize the removal of a cause from a state to a federal court, it must appear from the plaintiff's complaint that he relies upon some provision of the constitution, laws, or treaties of the United States, it does decide that he must so far rely, or that his claim must so far be predicated upon some provision of the constitution, law, or treaty of the United States, as would authorize him to bring an original action in the circuit court. Applying that test to this case, it seems to me it is the end of the controversy in this court, for it cannot be maintained that in this case the plaintiff makes such showing in its petition. I see nothing in this complaint which would entitle the plaintiff to invoke the original jurisdiction of a federal court to enforce the provisions of this act of the legislature. The facts set forth do not tend to show any claim arising under any act of congress, the constitution or treaty of the United States, but rather to foreshadow or anticipate a possible defense to the proceedings by the railroad company growing out of the act of congress of March 3, 1863. That defense is available to the defendant in the state court, and, being a federal question, can be carried to the supreme court of the United States if the right is denied.

Counsel have especially called the court's attention to the cases of California v. Central Pac. R. Co., 118 U. S. 394, 6 Sup. Ct. 1132, and California v. California Pac. R. Co., 127 U. S. 1, 8 Sup. Ct. 1073; also, to the Union Pac. Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113; but, in my view of those cases, they have no important bearing on the question here. If we were considering the general merits of the controversy between the state and the defendant corporation, instead of the question of jurisdiction, those cases would have a material bearing upon the questions at issue.

For the reasons above given, I reach the conclusion that this court is without jurisdiction, and this case must be remanded to the state court.

THAYER, Circuit Judge. I concur in the foregoing views expressed by Judge FOSTER. While the judiciary act of March 3, 1875 (18 Stat. 470, c. 137), remained in force, it was settled by repeated adjudications that when a case was removed from a state to a federal court, because of the existence of a federal question, the right to remove would be upheld, provided the record, when lodged in the federal court, showed either that the plaintiff based his right to relief, or that the defendant predicated his defense, on some provision of the federal constitution, or on some provision of a federal law or treaty. Railroad Co. v. Mississippi, 102 U. S. 135. This rule, that a case might be removed when a federal question was raised by either party, and the fact that a defendant, under the act of March 3, 1875, was privileged to plead to the declaration or complaint before a petition for removal was filed, made it possible, under that act, to bring upon the record any fed-

eral question which either party desired to raise, before the right of removal was exercised. But the doctrine no longer prevails that the whole record may be considered, including any allegations found in the petition for removal, in order to discover the existence of a federal question. In the case of Tennessee v. Union & Planters' Bank, 152 U. S. 454, 458, 14 Sup. Ct. 654, the supreme court of the United States, construing the act of March 3, 1887 (24 Stat. 553, c. 373), has unmistakably held that it is no longer possible to remove a case to the federal court on the ground that it involves a federal question, unless it affirmatively appears from the allegations of the complaint or declaration that the plaintiff predicates his right to relief, either in whole or in part, on some provision of the federal constitution, or on some provision of a federal statute or treaty. The case referred to was a suit brought by the state of Tennessee against a local bank of that state, to recover certain taxes which were imposed on the bank by the provisions of the general revenue law of the state. The state alleged in its bill, among other things, that the defendant bank claimed and insisted that it was exempt from all taxes, except such as were imposed by its charter, and that the general revenue law which the state was seeking to enforce, in so far as it attempted to impose taxes on the defendant bank, was void, under that clause of the constitution of the United States which forbids the states to pass laws impairing the obligation of contracts. Here was a clear statement in the plaintiff's bill that the defendant had and would invoke the protection of the federal constitution; but the court said, in substance, that this fact did not make the case one arising under the constitution and laws of the United States; that the case did not become one of federal cognizance, as one arising under federal laws, until a defense based on such laws had been pleaded; and that the true test by which to determine the existence of a federal question was whether the plaintiff, by the allegations of its bill, asserted a right under the constitution, laws, or treaties of the United States. In Osborn v. Bank, 9 Wheat. 738, 819, Mr. Chief Justice Marshall gave utterance to a similar thought, when he said, in substance, that a case arises under the constitution and laws of the United States when a question arising under those laws has assumed such a form that the judicial power is capable of acting on it. Following the rule thus clearly enunciated in these cases, and in the case of New Orleans v. Benjamin, 153 U. S. 411, 14 Sup. Ct. 905, the circuit court of appeals for this circuit, in City of Fergus Falls v. Fergus Falls Water Co., 19 C. C. A. 212, 72 Fed. 873, was constrained to hold that a case does not involve a federal question, because the plaintiff's declaration or bill foreshadows a possible defense that may be asserted under the constitution, laws, or treaties of the United States. The case of Tennessee v. Union & Planters' Bank, supra, was fully and carefully considered by the supreme court of the United States, in the light of the judiciary act of March 3, 1887. Two of the justices, Mr. Justice Harlan and Mr. Justice Field, filed a dissenting opinion. Since that decision was promulgated, the doctrine therein an-

nounced has been adhered to and applied in several other cases. Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34; Postal Tel. Cable Co. v. State of Alabama, 155 U. S. 482, 15 Sup. Ct. 192; Railroad Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869; St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. Ry. Co., 32 U. S. App. 372, 15 C. C. A. 167, and 68 Fed. 2. The case in question must therefore be regarded as establishing a rule of decision which no inferior federal court can ignore.

Applying the doctrine in question to the case in hand, it is evident that the case was not removable to the federal circuit court. The state of Kansas based its right to relief exclusively on the act of the legislature of that state which was passed in 1891. It asserted no right, title, privilege, claim, or immunity under the constitution, laws, or treaties of the United States. The declaration filed by the state does show that, owing to the character of the property involved, the defendant company may, and probably will, interpose a defense to the suit, founded upon the provisions of certain federal statutes. to wit, the act of congress of March 3, 1863 (12 Stat. 772, c. 98), and article 6 of the federal constitution; but whether it will assert such defenses or not remains to be seen. These defenses are not yet presented in such a form that the judicial power is capable of acting on them, and they may be waived when a plea to the declaration is interposed.

To fully subserve the purpose of their creation, the federal courts, when appealed to for relief, should invariably exercise and uphold the jurisdiction with which they have been clearly vested; but they ought not to usurp a jurisdiction which does not of right belong to them, by a strained construction of existing laws or judicial decisions. I concur with Judge FOSTER that the case at bar should be remanded to the state court, and it should be remanded to that court in the condition in which it was received. If any orders have been made while the case was pending in this forum, they should be vacated before the order of remand is entered.