**YOUNG & JONES v. HIAWATHA GIN & MFG. CO. and five other cases.**

(District Court, S. D. Mississippi. W. D. January 22, 1927.)

No. 417.

1. **Courts** ⟨=⟩289—Federal courts have jurisdiction of suits arising under laws regulating commerce, regardless of amount in controversy (Judicial Code, § 24, subd. 8 [Comp. St. § 991]).

If a suit arises under a law regulating commerce, federal courts have original jurisdiction, under Judicial Code, § 24, subd. 8 (Comp. St. § 991), regardless of the amount in controversy.

2. **Courts** ⟨=⟩289—If declaration discloses controversy over validity or effect of law regulating commerce, suit is one under law regulating commerce, within federal court's jurisdiction (Judicial Code, § 24, subd. 8 [Comp. St. § 991]).

If plaintiffs' declaration reveals a clear and substantial suit or controversy over the validity, construction, or effect of a law regulating commerce, which will be defeated or sustained according to the construction given such law, the suit arises under a law regulating commerce, and is one of which federal courts have original jurisdiction, under Judicial Code, § 24, subd. 8 (Comp. St. § 991).

3. **Courts** ⟨=⟩263—Federal courts have jurisdiction of case involving federal question, irrespective of other questions involved, and though case is decided on other than federal question.

If plaintiff in good faith sets up a federal question as a basis of his claim, federal courts have jurisdiction, irrespective of other questions involved, and though the case in the end may be determined on some other issue.

4. **Courts** ⟨=⟩289—Suits for value of cotton destroyed by fire while stored in warehouse licensed under United States Warehouse Act held suits under act relating to commerce (Judicial Code, § 24, subd. 8 [Comp. St. § 991]; Warehouse Act, § 14 [Comp. St. § 8747¾g]).

Suits by holders of cotton warehouse receipts issued subject to the United States Warehouse Act (Comp. St. § 8747¾ et seq.), for value of cotton destroyed by fire, *held* suits arising under a law relating to commerce and within jurisdiction of federal courts, under Judicial Code, § 24, subd. 8 (Comp. St. § 991), in view of presumption under Warehouse Act, § 14 (Comp. St. § 8747¾g), declaring that products stored in warehouse licensed under the act shall be deemed deposited subject to terms of act.

5. **Evidence** ⟨=⟩5(2)—Courts take judicial notice that nearly all cotton produced in Mississippi finds its way into interstate commerce.

Courts will take judicial notice that nearly all cotton produced in the state of Mississippi finds its way into interstate commerce, as affecting jurisdiction of federal courts of suits for value of cotton destroyed by fire while stored in warehouse licensed under United

States Warehouse Act (Comp. St. § 8747¾ et seq.).

6. **Removal of causes** ⟨=⟩3—Legislative intent to deny right of removal cannot be presumed.

Congressional intent to deprive a litigant of the right to remove a case otherwise removable cannot be presumed, but must be evidenced by use of appropriate language.

At Law. Action by Young & Jones against the Hiawatha Gin & Manufacturing Company, with five other cases against same defendant. On separate motions to remand to state court. Motions overruled.

R. B. Anderson, of Port Gibson, Miss., and Brunini & Hirsh, of Vicksburg, Miss., for plaintiffs.

Watkins, Watkins & Eager, of Jackson, Miss., for defendant.

HOLMES, District Judge. The court has before it for consideration six separate motions to remand to the state court six suits at law filed by six different plaintiffs in the circuit court of Caliborne county, Miss., which have been removed here on petition of the Hiawatha Gin & Manufacturing Company, the identical defendant in each case. The amounts involved run from $210, the alleged value of 2 bales of cotton destroyed by fire, to $2,900, the value claimed for 29 bales so destroyed, as alleged, by the negligence of the defendant, while said cotton was stored in a public warehouse operated by the defendant.

From the identical declarations of the plaintiffs we find that on the 5th and 6th of October, 1925, the defendant was engaged in the business of operating a warehouse, known as a United States bonded warehouse, and licensed under the United States Warehouse Act (Comp. St. § 8747¾ et seq.) to store cotton and collect charges therefor; that plaintiffs delivered cotton to defendant and received the following receipt for each bale:

"The one bale of cotton described herein, stored in the above-named warehouse, for which this receipt is issued subject to the United States Warehouse Act, the regulations for cotton warehouses thereunder, and the terms of this contract."

The declaration then contains the following allegation:

"And plaintiffs further aver that, upon delivery to defendant of said cotton as aforesaid, the said defendant then and there agreed that it would safely keep and take care of the said cotton, and that it would be guilty of no negligence in the storing and keeping of the same, and it then and there became and was the duty of the defendant safely to store and

17 F.(2d)—13

keep the said cotton, and to refrain from acts of negligence in the storage and preservation of said cotton, but, notwithstanding said duty respecting said cotton so owed by the defendant, defendant negligently suffered the same to be destroyed by fire on the 11th day of October, 1925; that such negligence consisted in the following acts, to wit:"

Six specific acts of negligence are alleged: (1) Not having sufficient watchmen; (2) failure of such watchmen as were left to attend to their proper duties; (3) failure to remove a portion of the cotton after fire was discovered; (4) failure to maintain a proper sprinkling apparatus and sufficient water protection; (5) storing cotton so as to close exits; (6) maintaining a wire fence, which prevented removal of cotton.

[1] The contention of the defendant in support of jurisdiction in this court is that the suits arise under a law regulating commerce. If this is true, under paragraph 8 of section 24 of the Judicial Code (Comp. St. § 991) the District Court has original jurisdiction, regardless of the amounts in controversy, and therefore the motions should be overruled.

[2] In order to determine whether the cases so arise—that is, whether they grow out of federal legislation—we must look to the allegations of the plaintiffs' own declarations, which are the same in all the cases. If such an inspection reveals a clear and substantial suit or controversy over the validity, construction, or effect of a law regulating commerce, which will be defeated or sustained, according to the construction given such law, then it may be fairly said that the suits arise under a law regulating commerce. Osborn v. Bank of United States, 9 Wheat. 738–822, 6 L. Ed. 204; Gold Washing & Water Company v. Keyes, 96 U. S. 199–201, 24 L. Ed. 656; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; White v. Greenhow, 114 U. S. 307, 5 S. Ct. 923, 962, 29 L. Ed. 199; Railroad Company v. Mississippi, 102 U. S. 135–139, 26 L. Ed. 96; Patton v. Brady, 184 U. S. 608–611, 22 S. Ct. 493, 46 L. Ed. 713; Macon Grocery Company v. Atlantic Coast Line, 215 U. S. 501, 506, 30 S. Ct. 184, 54 L. Ed. 300; First National Bank v. Williams, 252 U. S. 504, 40 S. Ct. 372, 64 L. Ed. 690.

[3] If the plaintiff in good faith sets up a federal question as a basis of his claim, then this court has jurisdiction. It is immaterial that other questions are also involved. New Orleans, M. & T. R. R. Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96. Neither does it make any difference that in the end the case is determined upon some other issue. City R. Co. v. Citizens' St. R. Co., 166 U. S. 557, 562, 17 S. Ct. 653, 41 L. Ed. 1114.

"If the plaintiff really makes a substantial claim under an act of Congress, there is jurisdiction, whether the claim ultimately be held good or bad. Thus in Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 68 [22 S. Ct. 585, 46 L. Ed. 808], it was pointed out that, while the certificate inquired whether a federal question was involved upon the pleadings, and while the counsel had argued the merits of the case, the function of this court 'is restricted to the inquiry whether, upon the allegations of the bill of complaint, assuming them to be true in point of fact, a federal question is disclosed, so as to give the circuit court jurisdiction in a suit between citizens of the same state.'" The Fair v. Kohler Die Co., 228 U. S. 25, 26, 33 S. Ct. 410, 412 (57 L. Ed. 716).

In Southern Railway Company v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836, it is said that the question as to responsibility under a bill of lading issued with reference to an interstate shipment is none the less a federal one because it must be resolved by the application of general principles of the common law. In Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325, it is held that, where a federal court takes jurisdiction on account of the presence of a federal question, it may rest its judgment upon any law, state or federal, which will enable it to dispose effectually of the case.

In Lewis on Removal, p. 207, the rule is announced that: "If the same facts show a right of action created or given by a state law, as well as one arising under a law of the United States, it is for the court to determine under which statute the action is maintainable, if at all, and if one construction of the federal statute would sustain, and another construction would defeat, a recovery under that statute, the action would be one arising under a law of the United States, and therefore of federal cognizance."

[4] That the United States Warehouse Act is one regulating commerce is not denied, nor is its constitutionality assailed. It is contended that the plaintiffs do not rely upon it, but upon the common law. This position, in my judgment, cannot be upheld. The defendant is sued in its federal character and under its federal function. The warehouse is an instrument of interstate commerce. The plaintiffs have entered into contractual relations with such a warehouse, and accepted a receipt which provides that the cotton described therein is stored subject to the United States Warehouse Act and the regulations for cotton warehouses thereunder. Among these regulations is section 4, which provides that the warehouseman shall exercise such care in re-

gard to cotton in his custody as a reasonably careful owner would exercise under the same circumstances and conditions.

That the defendant was operating a United States bonded warehouse, under said act, was a fact deemed sufficiently material to be alleged in the declarations; that the receipt issued for said cotton contains a provision that it was issued "subject to the United States Warehouse Act, the regulations for cotton warehouses thereunder, and the terms of this contract," also appears as Exhibit A to the complaint. By alleging these facts the plaintiffs invoked the legal principles of federal law applicable thereto. It is not necessary to plead the law, or any other matter of which the court takes judicial notice. No allegation has been suggested which plaintiffs might have added to strengthen their right to recover under the federal Warehouse Act. By changing the name of the court, the declarations might have been filed originally in this court.

[5] It is claimed that there is nothing in the declarations to show that the cotton was intended for interstate shipment; but there is nothing to show the contrary, and the court takes judicial notice that nearly all cotton produced in this state finds its way into interstate commerce. Furthermore, this particular cotton was actually stored as Congress contemplated, and by section 14 of the act (Comp. St. § 8747¾g) it is provided that "any person who deposits agricultural products for storage in a warehouse licensed under this act shall be deemed to have deposited the same subject to the terms of this act and the rules and regulations prescribed hereunder." Section 7 of the act (Comp. St. § 8747¾cc) provides that any person injured by the breach of any obligation to secure which a bond is given shall be entitled to sue in any court of competent jurisdiction to recover damages sustained by such breach.

Section 21 (Comp. St. § 8747¾jj) makes it the duty of the warehouseman, in the absence of a lawful excuse, to deliver the products stored, for which receipt is issued, upon demand. Section 29 (Comp. St. § 8747¾mm) provides that nothing in the act shall conflict with state laws or impair the operation thereof. A number of rules and regulations were issued by the Secretary of Agriculture under the act, including section 4, above mentioned.

The inescapable federal question presented by the declarations is: What legal duty rests upon a warehouse, licensed and bonded under the United States Warehouse Act, with reference to storing and caring for cotton; that is to say, what acts constitute negligence? In the event of a demurrer to the declarations, denying that the things complained of constituted negligence, we should have to look first to the act, and construe it, to pass upon the demurrer. We would have to decide what efficacy should be given to section 4 of the regulations under the act. The fact that there might be liability at common law, or under state statute, as plaintiffs contend, which the Warehouse Act does not take away, does not alter the case.

The plaintiffs had the option to sue either in a state or federal court. Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516. But, in case of suit in the state court, the defendant may remove to the federal court, the action involving the construction of a federal statute. There is no special inhibition against removal in the United States Warehouse Act, such as is in the Employers' Liability Act (Comp. St. §§ 8657–8665) and the Safety Appliance Act (Comp. St. § 8605 et seq.).

[6] The intention to deprive a litigant of the right to remove a case, otherwise removable, cannot be presumed, but must be evidenced by the use of appropriate language. It is immaterial what rights the plaintiffs have at common law or by state statute. It is sufficient that Congress, by the enactment of the Warehouse Act, has given the positive sanction of federal law to rights acquired by depositing cotton or other agricultural products in accordance with the terms of the act and regulations promulgated under it. Any case involving the enforcement of those rights arises under the laws of the United States regulating commerce.

Plaintiffs in argument and briefs invoke the benefit only of the common law. But the facts set forth in the declarations may be sufficient to permit them to recover at common law, under the Mississippi statute fixing liability of warehousemen, or under the United States Warehouse Act, accordingly as this court shall construe the one or the other, or all, in their favor. In looking to the plaintiffs' own statements to determine jurisdiction, we find the facts sufficiently alleged, if not traversed, to request the court to give judgment in favor of the plaintiffs under the common law, the Mississippi statute, and the Warehouse Act. When these considerations are supplemented with the presumption in section 14 of the act that the cotton was stored subject to its terms and regulation 4 thereunder, which was reiterated in the receipt given for each bale of cotton, all of which facts appear on the face of the plaintiffs' own

statement of the case, we do not think it permissible for the plaintiffs to stand in the argument solely upon their common-law rights.

Accordingly the motions to remand may be overruled.